# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Kamau,                                    :
                                               :
                    Petitioner                 :
                                               :
         v.                                    : No. 1939 C.D. 2015
                                               : Submitted: February 19, 2016
Unemployment Compensation                      :
Board of Review,                               :
                                               :
                    Respondent                 :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                        **FILED:  March 30, 2016**


John Kamau (Claimant) petitions for review of the August 3, 2015 order of the Unemployment Compensation Board of Review (Board) concluding that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because Claimant falsified his timekeeping records and was terminated from his employment with Brian's House Inc. (Employer) for conduct amounting to willful misconduct under the Law.  We affirm.

Claimant filed an initial internet claim for unemployment compensation on May 3, 2015.  (Record Item (R. Item) 1, Claim Record.)  When

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to discharge for willful misconduct connected to his or her work.  43 P.S. § 802(e).

contacted by the Department of Labor and Industry (Department), Employer did not submit separation information to the Department. (R. Item 3, Request for Separation Information.) On May 15, 2015, the Department issued a Notice of Determination finding Claimant was not ineligible for unemployment compensation. (R. Item 4, Notice of Determination.) On May 21, 2015, Employer petitioned for appeal from the Department's Notice of Determination, alleging that, following an investigation, Claimant was discharged from employment for deliberate misrepresentation of work hours. (R. Item 5, Employer's Petition for Appeal with Attachments.) A hearing was held before the Referee on June 10, 2015. (R. Item 9, Hearing Transcript (H.T.).)

At the hearing, Employer presented the testimony of two witnesses: Emily Kihara, Employer's Human Resources Manager, and Allen Gundu, Employer's Team Leader for its Princeton site. (*Id*., H.T. at 1-2.) Employer also presented a series of documents, including, among other documents, time logs, a schedule for its Princeton site, and pages from Employer's handbook as well as Claimant's acknowledgment of the handbook. (*Id*., H.T. at 7.) Claimant, represented by counsel, testified on his own behalf. (*Id*., H.T. at 1.) On June 11, 2015, the Referee issued a decision and order finding Claimant ineligible for unemployment compensation for conduct amounting to willful misconduct under the Law because he was discharged from employment for misrepresenting the hours in which he worked. (R. Item 9, Referee's Decision and Order.) Claimant appealed the Referee's decision to the Board and requested that the Board remand to the Referee for consideration of additional evidence. (R. Item 12, Claimant's Petition for Appeal with Attachments.)

On August 3, 2015, the Board issued a decision and order, in which it affirmed the Referee's conclusion that Claimant was ineligible to receive unemployment compensation under the Law because he was discharged from employment due to willful misconduct and denied Claimant's request for a remand hearing to consider additional evidence. (R. Item 14, Board's Decision and Order.) In its decision, the Board made the following findings of fact:

2. [Employer's] policy prohibits the falsification of any records pertaining to clients or an employee's employment with the employer.

3. [Employer's] policy states that time records of the employee's actual time worked are required by law and must be recorded accurately. For hourly employees, the time record within Kronos is the official record of actual hours worked. [Employer's] policy also states that deliberate falsification or misrepresentation of time is grounds for suspension pending possible termination.

4. [Claimant] was or should have been aware of [Employer's] policies.

5. [Employer] operates approximately 30 group homes in which individuals with special needs reside. [Claimant] primarily worked out of the Princeton site.

6. The residents are at work during the day and employees are not needed during the day unless there is a doctor's appointment a resident needs to attend.

7. On April 15 and 18, 2015, [Claimant] was clocked in between 9:00 a.m. and 2:56 p.m. even though [Claimant] was not scheduled to work until 3:00 p.m. and had no work to perform. On April 20 and 21, 2015, [Claimant] was clocked in from 9:00 a.m. to 12:33 p.m. even though [Claimant] was not scheduled to work and had no work to perform. [Claimant's] team leader was at the facility on these days and did not see [Claimant] there.

8. On April 26, 2015, [Claimant's] team leader asked [Claimant] to take a resident in [Employer's] van from the Princeton site to the Thistle site.

9. [Claimant] clocked in at the Thistle site at 8:32 a.m. when he dropped off the resident. [Claimant] did not clock out until 11:03 p.m. even though he was no longer at work after he returned the van to the Princeton site.

10. On April 27, 2015, [Claimant] was scheduled to work from 11:00 p.m. until 9:00 a.m. [Claimant] clocked in from 10:46 p.m. until 12:44 p.m. [Claimant] did not have permission from his team leader to work overtime. [Claimant's] team leader was at the facility and did not see [Claimant] there after 9:00 a.m.

11. On April 30, 2015, [Claimant] was scheduled to work from 3:00 p.m. to 11:00 p.m. [Claimant] clocked in at 8:00 a.m. and stayed until 11:52 p.m. [Claimant] did not have permission from his team leader to work overtime.

12. Employees working more than 40 hours per week are entitled to time and a half in pay.

13. On or about May 1, 2015, [Employer] began an investigation when it noticed it was over its budgeted allocated hours at the Princeton site.

14. On May 11, 2015, [Employer] terminated [Claimant's] employment for misrepresentation of time and clocking into the Kronos system while not on shift and/or unapproved hours.

(*Id*., Findings of Fact (F.F.) ¶¶2-14.) In addition to its findings of fact, the Board wrote a lengthy discussion in which it found that Claimant was not credible, found that Employer's witnesses were credible, and resolved all conflicts in the evidence in the favor of Employer. (*Id*., Discussion at 3.) The Board concluded that Employer had met its burden to demonstrate Claimant's termination from employment was for willful misconduct by establishing that Claimant had been clocked in for hours for which he was not approved to work and at times for which

he was not present at work. (*Id.*) The Board also concluded that a remand hearing to review additional evidence was not warranted because Claimant had an opportunity to present the evidence before the Referee, as well as to review Employer's documentary evidence prior to the hearing, and chose not to. (*Id.*, Discussion at 4.) Claimant, *pro se*, petitioned this Court for review of the Board's decision and order.

This Court's scope of review is limited to determining whether findings of facts are supported by substantial evidence, whether errors of law were committed, and whether constitutional rights were violated. *Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 n.3 (Pa. 1996). Substantial evidence is defined as "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Where the Board's findings of fact are supported by substantial evidence, the findings are conclusive on appeal. *Graham v. Unemployment Compensation Board of Review*, 840 A.2d 1054, 1059 (Pa. Cmwlth. 2004). When reviewing the record for substantial evidence, this Court must examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977). It is axiomatic that the Board is the ultimate finder of fact, empowered to make credibility determinations and resolve conflicts in the evidence, as well as to determine the weight afforded the evidence; this Court is bound by the Board's evidentiary determinations and is prohibited from substituting its findings for those of the Board under the guise of reviewing the

5

record to determine whether substantial evidence supports the Board's findings. *Peak v. Unemployment Compensation Board of Review,* 501 A.2d 1383, 1385, 1388 (Pa. 1985); *On Line Inc. v. Unemployment Compensation Board of Review,* 941 A.2d 786, 789 n.7 (Pa. Cmwlth. 2008).

Before this Court, Claimant has submitted a lengthy brief taking issue with the Board's overall findings of fact and discussion of the evidence. At its essence, Claimant's argument is that certain findings made by the Board are not supported by substantial evidence and that the Board was in error in finding the testimony of Allen Gundu, Employer's Team Leader for its Princeton site, credible. Claimant also argues that the Board should have remanded this matter to the Referee to hear additional evidence.

The question of whether an employee's actions constitute "willful misconduct" is a question of law subject to this Court's review. *Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 (Pa. 1996). Willful misconduct is defined as: (i) wanton or willful disregard for an employer's interests; (ii) deliberate violation of an employer's rules; (iii) disregard for standards of behavior which an employer can rightfully expect of an employee; or (iv) negligence indicating an intentional disregard of the employers interest or an employee's duties or obligations. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997). It is the employer's burden to demonstrate that an employee has engaged in willful misconduct; however, even if an employer has met its burden, an employee can prove that the actions were justifiable and reasonable under the circumstances such that the employee had good cause and the actions will not be considered willful misconduct. *Rossi*, 676 A.2d at 197. No such good cause defense exists, however,

6

where the employer has demonstrated that an employee falsified time sheets in order to receive extra pay for hours the employee did not work because such actions are tantamount to theft. *Temple University of Commonwealth System of Higher Education v. Unemployment Compensation Board of Review*, 772 A.2d 416, 418 (Pa. 2001). Where an employer has proven that an employee has falsified time sheets, an employer need not show significant detriment or substantial harm and even one isolated incident may be sufficient to constitute willful misconduct. *Pedersen v. Unemployment Compensation Board of Review*, 459 A.2d 869, 872 (Pa. Cmwlth. 1983). Under these circumstances, the conduct amounts to willful misconduct as a matter of law and the rationale of good cause is not applicable; if the employer has met its burden, the employee is disqualified from receiving unemployment benefits. *Temple University*, 772 A.2d at 418; *Department of Navy, Naval Air Warfare Center, Aircraft Division Warminster v. Unemployment Compensation Board of Review*, 632 A.2d 622, 630 (Pa. Cmwlth. 1993).

The Board found that Employer had met its burden by demonstrating that Claimant falsely clocked in when he was not at work and when he was not authorized to work shifts in order to collect overtime pay. Claimant argues that the Board's findings are not supported by the record.

Claimant challenges the Board's findings of fact Nos. 3, 7, and 11 on the basis that Employer's witness, Allen Gundu, falsified records and deliberately lied before the Referee. Claimant argues that Mr. Gundu testified truthfully regarding the Board's finding of fact No. 10, but that Mr. Gundu did not clarify and the Board's finding is based on a misunderstanding of the circumstances. Claimant also argues that findings of fact Nos. 9 and 10 reflect simple clocking errors. Finally, Claimant argues that Employer should be made to produce

7

additional evidence, such as Claimant's and Mr. Gundu's cellphone records and Claimant's records for the last 15 or 17 pay periods, which if produced would demonstrate that findings of fact Nos. 6 and 13 are in error.

Our standard of review is clear. This Court is bound by the Board's credibility determinations. The Board found Mr. Gundu's testimony credible. Furthermore, Claimant had an opportunity to testify before the Referee and put forth his version of events. The Board did not find this testimony credible. The Board did not accept Claimant's contention that the discrepancies between when Claimant was scheduled to work and when Claimant was clocked in at work, as well as when Claimant was clocked in at work and actually present at work were a result of simple error.

Employer submitted voluminous evidence in this matter, including testimony from two witnesses. Claimant argues in his brief that Employer's evidence contains contradictions and he is correct. Employer submitted a computer printout from its timekeeping system showing that Claimant was clocked in on certain dates for specific periods of time and testimony from its witnesses that Claimant was clocked in on those dates for specific times, yet was scheduled to work for different periods of time. The dates and times on the computer printout and the dates and times testified to by Employer's witnesses do not always align. For example, Ms. Kihara testified that Claimant was supposed to work from 2:30 p.m. until 11:00 p.m. on April 30th, while Mr. Gundu testified that Claimant was scheduled to begin work at 3:00 p.m. and end at 11:00 p.m., and the Board found that Claimant was scheduled to begin work at 3:00 p.m. (R. Item 9, H.T. at 5, 13; R. Item 14, Board's Decision and Order, F.F. ¶11.) Likewise, Ms. Kihara testified that Claimant clocked in at 8:00 a.m. on April 30th and did not clock out until

8

11:52 p.m., while the computer printout shows that Claimant clocked in at 8:08 a.m., clocked out at 10:52 p.m., clocked back in at 11:20 p.m. and did not clock out again until 10:24 a.m, and the Board found that Claimant clocked in at 8:00 a.m. and stayed until 11:52 p.m. (R. Item 9, H.T. at 5, Ex. 8; R. Item 14, Board's Decision and Order, F.F. ¶11.) The Board is charged with sifting through the record, resolving conflicts found in the evidence, and making findings of fact based on that evidence. This is what the Board did here. While Claimant has identified conflicts in the evidence, these conflicts do not amount to a lack of support for the Board's findings, but simply serve to mark where the Board had to use its discretion to resolve those conflicts.

Moreover, none of the conflicting evidence undermines the determination of willful misconduct; whether it was for ten minutes or ten hours on a particular day, Claimant was repeatedly clocked in as authorized to work and present for work when he was not authorized to work and when he was not present at work, and this conduct amounts to willful misconduct under the Law. *See, e.g., General Electric Co. v. Unemployment Compensation Board of Review*, 411 A.2d 578, 580 (Pa. Cmwlth. 1980) (holding that a claimant was ineligible to receive benefits due to willful misconduct even though he only received an erroneous payment for six additional minutes of work because violation of an employer's timekeeping procedures is not *de minimis*). Claimant admitted instances of being clocked in while he was not working and offered an explanation for his conduct, but the Board did not find him credible and found instead that he falsified his hours on Employer's timekeeping system. (R. Item 9, H.T. at 21-22.) Substantial evidence supports the Board's findings of fact and, based on those findings, Claimant has committed willful misconduct as a matter of law by using

9

Employer's timekeeping system to falsely report hours worked in order to receive additional pay.

Claimant argued before the Board and again before this Court that he should be allowed to reopen the record to submit additional evidence and require Employer to produce additional evidence. Claimant attached some of the documents he seeks to enter into the certified record to the brief he filed with this Court. The Board reviewed Claimant's request and rejected it.

Claimant was represented by counsel before the Referee and had the opportunity to present all of the evidence he seeks to make a part of the record now before the Referee. Claimant did not do so. Similarly, Claimant had the opportunity to argue before the Referee that his termination was in retaliation for a workers' compensation claim he made in December 2013, an argument he advanced before the Board and before this Court based on the documents he now seeks to place into the record. Claimant did not do so. Instead, Claimant offered a different reason for why he should receive benefits—he argued that there were simple errors and misunderstandings rather than falsifications of his work hours—and the Referee rejected Claimant's proffered basis for his timekeeping errors. Claimant also had the opportunity to review the documents Employer submitted to the Department and to subpoena documents from Employer that Claimant believed were relevant to his claim. Again, Claimant did not do so.

Under the Law, the Board has discretion to determine whether a remand is appropriate. Section 504 of the Law, 43 P.S. § 824. This Court will reverse a decision by the Board denying a request to remand for additional evidence only where there has been an abuse of discretion. *Kiehl v. Unemployment Compensation Board of Review*, 747 A.2d 954, 957 (Pa. Cmwlth. 1999). Claimant

10

has failed to show that the Board abused its discretion. It is clear from the record that Claimant had a full and fair opportunity to be heard, including the opportunity to place this evidence before the Referee at the time of the hearing but chose not to do so in favor of a different basis for receiving benefits. *Fisher v. Unemployment Compensation Board of Review*, 696 A.2d 895, 897 (Pa. Cmwlth. 1997) (concluding that "a remand hearing is generally granted to allow a party the opportunity to present evidence not offered at the original hearing because it was not then available"). Therefore, we find no abuse of discretion in the Board's refusal to remand for additional evidence.

In an appeal from an order of the Board, this Court is bound by the facts in the certified record. *Grever v. Unemployment Compensation Board of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010). Based on the record in this matter, Claimant committed willful misconduct under the Law and is ineligible to receive unemployment compensation. Accordingly, the order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | |
|---|---|
| John Kamau, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 1939 C.D. 2015 |
| | : |
| Unemployment Compensation | : |
| Board of Review, | : |
| | : |
| Respondent | : |

# **O R D E R**

AND NOW this 30th day of March, 2016, the order of the Unemployment Compensation Board of Review in the above-captioned matter is AFFIRMED.

 

_____

**JAMES GARDNER COLINS, Senior Judge**