

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2007

# Gunser v. Philadelphia

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1226

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Gunser v. Philadelphia" (2007). *2007 Decisions.* Paper 957.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/957

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1226

_____

PAUL GUNSER; SHAWN DOUGHERTY; ALBERT PRICE;
JOSEPH ALLAN; JOSEPH MCGINTY; ANTHONY KOWALSKI

v.

CITY OF PHILADELPHIA; PHILADELPHIA POLICE
DEPARTMENT; SYLVESTER JOHNSON, IN HIS INDIVIDUAL
CAPACITY; JUDY DUNN; CHARLES FEGGINS; MICHAEL
GELOVICH; MAURICE LANIER

Paul Gunser, Albert Price,
Joseph Allan and Anthony Kowolsky,
Appellants

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 04-cv-03548
District Judge:  The Honorable Cynthia M. Rufe.

_____

Submitted Under Third Circuit LAR 34.1(a)
May 21, 2007

_____

Before: BARRY, CHAGARES, and TASHIMA,* Circuit Judges

(Opinion Filed: June 12, 2007)

_____

* The Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

OPINION

BARRY, <u>Circuit Judge</u>

Appellants contest the District Court's grant of summary judgment in favor of Appellees on Appellants' claims of First Amendment retaliation, violation of due process, and malicious prosecution. For the reasons that follow, we will affirm.

**I.**

Appellants are four current and former Philadelphia police officers who investigated the May 2000 collapse of a nightclub and restaurant into the Delaware River. In the course of their investigation, they recovered eight beer kegs from the river and subsequently redeemed them for cash, allegedly allocating the monies to a police coffee fund. Several weeks later, an anonymous letter was sent to the Pennsylvania Attorney General accusing the officers of improper "diverting of evidence," and accusing Sergeant Shawn Dougherty of engaging in non-work-related activities while on duty.

An internal investigation followed. Dougherty was criminally prosecuted and acquitted, but was nevertheless dismissed; the Fraternal Order of Police ("FOP") filed a grievance that was ultimately settled. Meanwhile, Appellants were transferred out of the Marine Unit for impeding the investigation, and the FOP filed a separate grievance on their behalf. After Appellants told internal investigators that they would testify on Dougherty's behalf, formal disciplinary proceedings were instituted against them. They

ultimately settled their grievance, including the disciplinary proceedings, by agreeing to waive any legal claims they might have arising out of the subject matter of the grievance. Pursuant to the settlement agreement, Appellants' records were expunged; two of the Appellants were transferred back to the Marine Unit, and two others received small cash payments.

Appellants, together with Dougherty and another officer, Joseph McGinty, filed this § 1983 lawsuit on July 23, 2004 against the City of Philadelphia, the Philadelphia Police Department and its Commissioner in his official capacity, and four police officers whom Appellants accuse of sending the anonymous letter (collectively, "Appellees"). The complaint alleged claims for First Amendment retaliation, violation of due process, and malicious prosecution. Appellees filed an answer and counterclaim for breach of contract and tortious interference with contractual relations.

After limited discovery, Appellees filed a motion for summary judgment and two supplemental motions for summary judgment. The District Court, by order dated November 15, 2005, granted partial summary judgment in favor of Appellees as to all claims brought by Appellants and McGinty, but denied summary judgment as to Dougherty's malicious prosecution claim. By order dated December 15, 2005, the District Court directed the clerk to terminate Appellees' supplemental motions for summary judgment as having been decided by the Court's November 15, 2005 memorandum and order. Appellants filed a notice of appeal on January 13, 2006. The remaining parties (Dougherty and Appellees) settled their dispute on October 12, 2006,

3

and a final order of dismissal was entered the following day.

## II.

### A.

As a threshold matter, Appellees argue that we lack jurisdiction over this appeal because Appellants filed their notice of appeal more than 30 days after the District Court's November 15, 2005 order. Appellants respond that their notice of appeal was timely filed within 30 days of the District Court's December 15, 2005 final order. We disagree with both views, finding, instead, that the final order from which the appeal should have been taken was the October 12, 2006 order dismissing the remaining claims between Dougherty and Appellees.

When an order of a district court disposes of fewer than all claims or claims against fewer than all parties, an aggrieved party generally may not immediately appeal unless the district court expressly determines that there is no just cause for delay and expressly directs entry of final judgment. Fed. R. Civ. P. 54(b); *Carter v. City of Phila.*, 181 F.3d 339, 343 (3d Cir. 1999). A statement of reasons must accompany the entry of final judgment under Rule 54(b). *Carter*, 181 F.3d at 343. No Rule 54(b) certification or statement of reasons accompanied the November 15, 2005 or December 15, 2005 orders, so we conclude that the October 12, 2006 order of dismissal was the District Court's final judgment. Because Appellants filed their notice of appeal before the entry of final

4

judgment, their appeal is timely. Fed. R. App. P. 4(a)(2).[1]

**B.**

In their prior settlement agreement, Appellants released Appellees from "any claims [Appellants] had, have, or may have against [Appellees] arising out of the subject matter of the aforementioned grievance and demand for arbitration." (Appellants' App. at 51.) Appellants argue that the grievance contested only their improper transfer out of the Marine Unit. Thus, they contend, the settlement agreement, in which the FOP agreed to withdraw its grievance of their improper transfer, did not purport to settle other employment-related claims that Appellants might have, such as claims for allegedly retaliatory investigations and disciplinary charges.

We construe releases according to principles of state contract law, insofar as state law is consistent with federal objectives. *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975). Under Pennsylvania law, our guiding concern when construing the scope of a release is to honor the parties' intent. *Id.*; *A.G. Cullen Constr., Inc. v. State Sys. of Higher Educ.*, 898 A.2d 1145, 1167 (Pa. Commw. Ct. 2006). We do this by looking at the language of the release and the circumstances surrounding its execution. *A.G. Cullen*, 898 A.2d at 1167. The language of a larger settlement

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo*, and will affirm only if there is no genuine issue of material fact and Appellees are entitled to judgment as a matter of law. *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006).

agreement into which the release is incorporated may also provide key insight into the parties' intent. *Id.* at 1167-68; *see also, e.g.*, *Rossi v. Pa. Unemployment Comp. Bd. of Review*, 676 A.2d 194, 197 (Pa. 1995).

The release here forecloses claims against Appellees "arising out of the subject matter of the aforementioned grievance and demand for arbitration." (Appellants' App. at 51.) We must determine, therefore, the scope and "subject matter" of the grievance and demand for arbitration. There is no dispute that, at least initially, the grievance challenged only Appellants' transfer out of the Marine Unit. (*See id.* at 132; *see also id.* at 133-34 (dating the disciplinary proceedings after the filing of the grievance).) Appellees contend, however, that in the course of the grievance proceedings, Appellants also argued that the disciplinary proceedings against them were improper. To verify that Appellants did, in fact, raise this issue in the grievance proceedings, we need look no further than the unambiguous language of the settlement agreement.

The settlement agreement provided that in consideration of the FOP agreeing to withdraw its grievance, Appellees agreed to rescind the disciplinary charges and expunge Appellants' official records. (*Id.* at 50.) Thus, the settlement agreement resolved, not only the grievance, but also the disciplinary proceedings against Appellants. It did so, moreover, pursuant to the parties' express "desire to resolve *this matter* without resort to further litigation." (*Id.* at 49 (emphasis added).) We think it clear, therefore, that the parties to the settlement agreement viewed "this matter" as encompassing both the contested transfer of Appellants out of the Marine Unit, and the disciplinary charges

6

pending against them. This was the "subject matter" of the grievance and arbitration proceedings at the time the parties executed their settlement agreement.

We easily conclude, therefore, that the parties intended to foreclose the very type of claims that Appellants now assert. That Appellants did not previously raise these precise claims is irrelevant. The propriety of the disciplinary action against Appellants was part of the subject matter of the grievance, and their current claims, which raise but a new challenge to the propriety of the disciplinary proceedings, clearly arise out of that subject matter. The parties' express intention to resolve that matter "without resort to further litigation" controls, and we conclude that Appellants have waived their current claims.[2]

## III.

For the foregoing reasons, we will affirm the final judgment of the District Court granting summary judgment to Appellees as to all of Appellants' claims.

---

[2] To the extent that our caselaw requires us to consider the totality of the circumstances surrounding the execution of the settlement agreement, *see W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995), we find that Appellants' waiver of the type of claims that they now assert was knowing and voluntary.